DAVID HALLIDAY *v.* PETER A. JOHNSON and others.

A decree in a mortgage case was appealed from; and pending the appeal, and within a year from the date of the decree, an agreement, under seal, was made between the parties, that a certain portion of the amount due on· the decree should be paid on the execution of the agreement; that the interest on the balance should be paid half yearly, and that instalments of principal should be paid yearly; and that on failure in paying any instalment, the complainant should be at liberty to issue execution on his decree. Held, that on failure of payment of an instalment, an execution might issue after a year without *scire facias.*

In June, 1842, Peter A. Johnson filed his bill for foreclosure, on a mortgage dated April 1, 1841, given by Edwin Ford and wife to him, to secure the payment of $6,000, in four years from date, with interest half yearly, from Feb. 1, 1841, according to the condition of a bond, &c.   On the 17th April, 1843, a Master reported that there was then due on the mortgage $910 53, and that there would become due on the 1st of April, 1845, $6,000, and the interest thereon from Feb. 1, 1843, being $778 .19; that a sufficient part of the mortgaged premises to pay the amount due at the date of the report could not be sold, and that the whole of the mortgaged premises should be sold to pay the amount then due and the amount to become due.   On the 28th July, 1843, a decree was made for the sale of the whole premises, to pay the amount then due and the amount to become due. Ford appealed from this decree; and, in consequence of the appeal, no execution was issued.   On the 1st May, 1843, a half year's interest became due.   In Nov. 1843, Johnson brought ejectment on his mortgage.   On the 1st Feb. 1844, another half year's interest became due.

In this state of things, an agreement of three parts was made, by writing under seal, dated May 20, 1844, between Ford, of the first part, and George D. Strong, of the second part, and Johnson, of the third part, by which, after reciting the said mortgage, and the proceedings thereon, and the appeal, and the ejectment suit, and that Ford was about to sell the premises to Strong, Ford agrees with Johnson to withdraw his appeal, and

to permit judgment to be entered in the ejectment. Strong agrees with Johnson to pay him, on the execution of the agreement, $6,000, and to pay him the further sum of $484 28, on or before May 31st, 1844, with interest from the date of the agreement, and all costs, and to pay Johnson the interest on the $6,000, half yearly, on the first days of Aug. and Feb. in each year, and $500 of the principal on the 1st of April, 1845, and $500 of the principal on the 1st of April in each succeeding year, until the 1st of April, 1848, when the balance of the said principal was to become payable from Strong to Johnson. That Strong should put the mill, machinery and premises in good repair, and keep them so until the mortgage should be paid off, and that all the machinery he should put upon the premises should be subject to the mortgage; that he would keep the mill and machinery insured for at least $5,000, and assign the policy to Johnson. That after Ford's said appeal should be withdrawn, the decree in Chancery should remain and be of the same force as if the appeal had not been taken, and should stand to secure the performance of the covenants contained in the said agreement; and that if Strong should fail to make the payments of interest or principal for thirty days after the same should become payable according to the said agreement, or fail in any other thing in said agreement contained to be performed by him, then Johnson should have full right to issue execution on the said decree and sell the mortgaged premises according to law; and that in case of any breach of said agreement on the part of Strong the whole of the principal money should become payable on the 1st of April, 1845, according to the condition of the said mortgage. Johnson agreed to delay all proceedings on the decree until April 1st, 1848, except upon the breach of said agreement by Ford or Strong, and to extend the time of payment of the mortgage (except as before stated) for three years from the time when it becomes payable by the terms of it, i. e. to April 1st, 1848; and that he would take no measures to enforce the decree, nor issue execution on the judgment in ejectment, unless it be by reason of the breach or non-performance of the said agreement.

On the 22d May, 1844, Ford and his wife conveyed the pro-

perty to Strong, subject to Johnson's mortgage; and on the next day Strong and his wife executed a mortgage on the premises to Ford, to secure $3,800, part of the purchase money.

On the 22d May, 1844, Strong paid every sum required by the said agreement to be paid, leaving only the $6,000 unpaid and interest thereon from Feb. 1st, 1844.

Strong went into possession, and put the mill, machinery and premises in good repair; and the bill states that he put in the mill valuable machinery and otherwise improved the premises to the value of $7,000 or $8,000; and the interest was paid to Johnson up to Aug. 1, 1846.

On the 15th June, 1846, Strong and his wife, for $4,500, conveyed an undivided half of the premises to David Halliday, the complainant; and on the 31st Oct. 1846, for $5,000, conveyed the other half to the said complainant.

On the 23d Aug. 1846, Johnson caused an execution to be issued on the decree, and delivered to the Sheriff, commanding him to make, by sale of the mortgaged premises, $910 53, with interest thereon, and $6,000 with interest thereon.

The execution was issued without scire facias and without notice.

Halliday thereupon filed his bill, stating the foregoing facts, and other matters from which he supposed an equity might arise in his favor to have the sale stayed on his paying what by the terms of the agreement would then be due, throwing out of consideration that part of it which stipulates that on the failure to pay any instalment therein mentioned Johnson should be at liberty to proceed on the decree; and prayed an injunction staying the sale; which was granted.

An answer was put in by Johnson; and a motion thereupon made to dissolve the injunction.

*M. Little* and *A. Whitehead*, in support of the motion. They cited 1 *Green's Ch.* 444; 2 *Archb. Pr.* 87; 2 *Tidd's Pr.* 1005, 1021, 3; 1 *Sellar's Pr.* 189, 515; 2 *Burr.* 664; 19 *John. Rep.* 173; 11 *Ib.* 513; 8 *Ib.* 361; 2 *A. K. Marsh.* 512, 573; 2 *John. Ch.* 51, 526.

*C. E. Scofield* and *W. Pennington*, contra.

THE CHANCELLOR. The allegations of the bill from which it was supposed an equity might arise in favor of the complainant to have the sale stayed on his paying what would be due by the terms of the agreement, independent of that part of it which stipulates that on failure to pay any instalment of principal therein mentioned Johnson should be at liberty to proceed on the decree, are, I think, sufficiently denied by the answer.

The other question is, whether, under the circumstances, it was regular to issue an execution without a scire facias. The question is the same in this case, it strikes me, as if the agreement was between Johnson and Ford alone. The decree was obtained in July, 1843. The agreement was made in May, 1844. It provides that a certain portion of the amount due on the decree should be paid on the execution of the agreement; that the interest on the balance should be paid half yearly; that instalments of $500 each should be paid on the 1st of April after the date of the agreement, and on the 1st of April in each succeeding year, till April 1, 1848, when the whole balance should be paid; and that on failure in paying any instalment Johnson should be at liberty to issue execution on his decree. I am. of opinion, that under such an agreement for a stay of execution an execution may issue after a year, on a failure to comply with the conditions on which such stay is granted, without a *scire facias*. The fact that something has been paid on the decree (several half yearly payments of interest have been made according to the requirement of the agreement) does not render it necessary to issue a *scire facias*. The case is the same in this respect as if a part of the sum decreed should be paid within the year, and an execution should be issued within the year without a *scire facias*. That Johnson did not issue execution on the first default in paying a yearly instalment of principal, but waited till after default in paying the second instalment, did not defeat his right to issue execution after the second default. The injunction will be dissolved, and the complainant in the decree be permitted to proceed on his execution, endorsing thereon the amount remaining due.

Order accordingly.